Megan J. Freismuth, Esq.
STATEN ISLAND LEGAL SERVICES
36 Richmond Terrace Suite 205
Staten Island, NY 10301
Tel: (718) 233-6480
mfreismuth@silsnyc.org
*Attorneys for Defendant Carlton Pope*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------**X**

U.S. BANK TRUST, N.A. AS TRUSTEE FOR                    Hon. Sterling Johnson, Jr.
LSF9 MASTER PARTICIPATION TRUST,

            Plaintiff,

                                            Case No. 15-cv-03284 (SJ-
                                            RML)

-against-

CARLTON POPE, ADAM REY, ANGELA HALL
BORROUGHS, NEW YORK CITY PARKING
VIOLATIONS BUREAU,

            Defendants.

-----------------------------------------------------------------**X**

**<u>MEMORANDUM OF LAW IN</u>**
**<u>SUPPORT OF DEFENDANT CARLTON POPE'S</u>**
**<u>MOTION TO DISMISS</u>**

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ................................................................................................................. 3

ARGUMENT .......................................................................................................... 4

    I.    THE COURT SHOULD ABSTAIN FROM HEARING THIS ACTION BECAUSE OF NEW YORK'S COMPREHENSIVE STATUTORY AND REGULATORY SCHEME GOVERNING MORTGAGE SERVICING AND RESIDENTIAL FORECLOSURE ACTIONS ............................................................................................................ 4

        A.  New York's Residential Mortgage Foreclosure Process Implicates Issues of Local Concern and is Controlled by Comprehensive State Legislation, Regulations and Court Rules. ........................................................................................................... 5

        B.  This Court Should Abstain from Entertaining this Residential Foreclosure Action Governed by New York's Comprehensive Legislative and Regulatory Foreclosure Process Framework. ................................................................................................... 11

    II.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF FAILED TO COMPLY WITH NY RPAPL §§ 1304, 1306, STATUTORY CONDITION PRECEDENTS .................................................................................................... 17

        A.  Plaintiff Has Not Complied With RPAPL § 1304. ....................................... 17

        B.  Plaintiff Has Not Complied With RPAPL § 1306. ....................................... 19

    III.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF DOES NOT HAVE STANDING TO PURSUE A FORECLOSURE ACTION ............................... 21

    IV.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE SERVICE OF PROCESS WAS INSUFFICIENT ............................................................................ 23

CONCLUSION ...................................................................................................... 25

## Statutes

Fed. R. Civ. P. 12(b)(1)...................................................................................... 2, 21
Fed. R. Civ. P. 12(b)(6)............................................................................ 2, 17, 20, 21
Laws of New York, 2008, Chapter 472 ........................................................................ 5
Laws of New York, 2009, chapter 507 .............................................................. 9, 13, 14
New York CPLR § 3408 ............................................................................................. 7
New York CPLR § 3408(f)......................................................................................... 7
New York RPAPL § 1304 ....................................................................................... 2, 8
New York RPAPL § 1306 ................................................................................. 2, 8, 19
Part 419 of the New York State Department of Financial Services Business Conduct Rules 10, 11
Section 202.12-a of the Uniform Rules for New York State Trial Courts .................................. 10

## Other Authorities

2011 Report of the Chief Administrator of the Courts .................................................... 8
2014 Report of the Chief Administrator of the Courts ................................................... 14
NYS Office of the State Comptroller, Local Government Snapshot (August 2015)................... 13

## Statutes, Rules, and Regulations

*American Home Mortgage Servicing, Inc. v. Bobbitt*, 19093/08, NYLJ 1202635568948 (Sup., KI, Decided Dec. 12, 2013) ................................................................................ 14
*Aurora Loan Servs., LLC v Weisblum,* 923 N.Y.S.2d 609 (2d Dep't 2011).................... 17, 19, 20
*Bank of America v. Guzman*, 892 N.Y.S.2d 846 (Sup. Ct. Queens Cty. 2009). .......................... 17
*Bank of New York v. Alderazi*, 900 N.Y.S.2d 821 (Kings Cty. Sup. Ct. 2010) .......................... 22
*Bank of New York v. Silverberg*, 86 A.D.3d 274 (2d Dep't 2011)....................................... 21
*Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1089, 87 L.Ed. 1424 (1943)............................ 4
*Cadelrock Joint Venture v. Callender*, 973 N.Y.S.2d 539 (Sup. Ct. Kings Cty. 2013) ............... 18
*Campaign v. Barba*, 805 N.Y.S.2d 86 (2d Dep't 2005) .................................................. 21
*Canady v. Koch*, 608 F. Supp. 1460 (S.D.N.Y. 1985)..................................................... 4
*CitiMortgage, Inc. v. Stosel*, 89 A.D.3d 887 (2d Dep't 2011)........................................... 23
*Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ....................................................................................................... 4
*Corcoran v. Ardra Ins. Co., Ltd.*, 657 F. Supp. 1223 (S.D.N.Y. 1987)................................... 13
*Cox v. U.S. Dep't of Agric.*, 2015 WL 4187818 (9th Cir. 2015) ........................................ 12
*Cox v. U.S. Dep't of Agric.*, 954 F. Supp. 2d 1061 (D. Nevada 2012) ................................. 12
*Deutsche Bank National Trust Co. v. Spanos*, 102 A.D.3d 909 (2d Dep't 2013) ...................... 19
*First Nat'l Bank of Chicago v. Silver*, 899 N.Y.S.2d 256 (2d Dep't 2010)................................ 21
*HSBC Bank USA N.A. v. Roumiantsev*, 2013 WL 2500829 (Kings Cty. Sup. Ct. June 11, 2013)21
*HSBC Bank USA, NA v. Yeasmin*, 2008 WL 1915130 (Kings Cty. Sup. Ct. May 2, 2008)......... 22
*In re Gorman*, 2011 WL 5117846 (Bankr. E.D.N.Y. Oct. 27, 2011) .................................... 21
*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 2014 WL 868827 (E.D.N.Y. Mar. 5, 2014) *on reconsideration, In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 2014 WL 1598017 (E.D.N.Y. Apr. 21, 2014)................................................... 22
*Jackson v. City. of Nassau*, 339 F. Supp. 2d 473 (E.D.N.Y. 2004) .................................... 24
*Kearney v. Kearney*, 979 N.Y.S.2d 226 (Sup. Ct. Monroe Cty. 2013)........................... 17, 18, 19
*Liberty Mutual Ins. Co. v. Hurlburt*, 585 F.3d 639 (2d Cir. 2009)................................... 4

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) ............................................................................................................................................ 4

*Moos v. Wells*, 585 F. Supp. 1348 (S.D.N.Y. 1984) ................................................................. 12

*Naylor v. Case & McGrath, Inc.*, 585 F.2d 557(2d Cir. 1978) .................................................. 16

*Ocwen REO Trust v. Larmond*, No.11-6769, slip op. at 5-6 (Kings Cty. Sup. Ct. June 3, 2014) 20

*Onewest Bank, FSB v. Colace,* 130 A.D.3d 944, 2015 WL 4546498 at *1-2 (2d Dep't 2015).... 15

*OneWest v. Drayton*, 2010 WL 4187065 (Kings Cty. Sup. Ct. Oct. 21, 2010) .......................... 23

*Phillips, Nizer, Benjamin, Krim & Balloon v. Rosenstiel*, 490 F.2d 509 (2d Cir. 1973) ............. 15

*Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.*, 896 F. Supp. 2d 198 (E.D.N.Y. 2012) ............................................................................................................................................ 21

*Selmani v. City of New York*, 100 A.D.3d 861 (2d Dep't 2012) ................................................. 25

*Smith v. Metropolitan Prop. & Liab. Ins. Co.*, 629 F.2d 757 (2d Cir. 1980) ............................... 4

*U.S. Bank  v. Sharif*, 89 A.D.3d 723 (2d Dep't 2011) ............................................................... 23

*U.S. Bank N.A. v. Gioia*, 42 Misc. 3d 947(Sup. Ct., Queens Cty. 2013, McDonald, J.) ............. 14

*U.S. Bank N.A. v. Padilla*, 31 Misc. 3d 1208(A) (Sup. Ct., Dutchess Cty 2011, Pagones, J.) ..... 15

*U.S. Bank, N.A. v. Williams*, 121 A.D.3d (2d Dep't 2014) ........................................................ 15

*Warshun v. New York Community Bancorp Inc.*, 957 F. Supp. 2d 259 (E.D.N.Y. 2013) ............ 24

*Wells Fargo Bank, N.A. v. Hughes*, 27 Misc. 3d 628, 897 N.Y.S.2d 605 (Sup. Ct. Erie Cty. 2010). ...................................................................................................................................... 11

*Wells Fargo Bank, N.A. v. Meyers*, 108 A.D.3d 9 (2d Dep't 2013) ........................................... 15

*Wells Fargo Bank, N.A. v. Van Dyke,* 101 A.D.3d 638 (1st Dep't 2012).................................... 16

## Legislative History

N.Y. State Assemb., Memo. in Support of Legis., A. 5582A, 2013 Leg. ...................................... 9

N.Y. State S., Memo. in Support of Legis., S. 66007, 2009 Leg., 20th Extraordinary Sess. (2009) .................................................................................................................................... 6, 7

N.Y. State S., Memo. in Support of Legis., S. 8143A, 2008 Leg., Bill Jacket .............................. 6

Defendant Carlton Pope ("Defendant" or " Mr. Pope"), by and through his attorneys, Staten Island Legal Services, respectfully submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to the doctrine of abstention,  Rules 12(b)(1), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, and Sections 1304 and 1306 of the New York Real Property Actions and Proceedings Law ("RPAPL"), and for such other relief as this Court shall deem just and proper.

## PRELIMINARY STATEMENT

Plaintiff U.S. Bank Trust, N.A. as Trustee For LSF9 Master Participation Trust ("Plaintiff") purports to invoke this Court's diversity jurisdiction to bring a residential foreclosure action against Mr. Pope.  Plaintiff's action is a blatant exercise in "forum shopping" and a transparent effort to evade New York State's regulatory scheme governing residential foreclosure actions.

This Court should exercise its discretion to abstain from entertaining this action, in order to effectuate (and not interfere with) New York State's comprehensive regulatory scheme and consumer protections governing residential foreclosure actions designed to address a foreclosure crisis of compelling interest to New York State, and in order to discourage the kind of blatant forum shopping that Plaintiff's filing of this action represents. This action is also subject to dismissal because of Plaintiff's lack of standing to foreclose, and for failure to satisfy conditions precedent to maintaining a foreclosure action under New York law.

Since 2008 the New York State legislature, judiciary and executive have implemented a pervasive and comprehensive regime governing mortgage servicing and the judicial foreclosure process to address a foreclosure crisis profoundly affecting New York State.  The overarching goals of this regime include prevention of avoidable foreclosures and the associated adverse

1

effects on both the individual households and surrounding communities impacted when homes are needlessly lost to foreclosure.

New York has enacted a series of laws, and promulgated numerous administrative and court rules and procedures, governing the judicial foreclosure process specifically designed to preserve homeownership and protect borrowers from unscrupulous practices in foreclosure actions.  In light of New York's comprehensive legislation and regulations in the residential foreclosure arena, which is an interest of peculiarly local concern, abstention in favor of the state judiciary that has developed expertise and experience handling thousands of residential foreclosure actions each year is appropriate.

This Court should also dismiss this action for Plaintiff's failure to comply with statutory conditions precedent to maintenance of  a residential foreclosure action under New York law, provisions which are strictly construed and the violation of which are fatal.   New York RPAPL § 1304 requires lenders to provide borrowers with a "90-Day Notice" prior to commencing a foreclosure action, and  New York RPAPL § 1306 requires plaintiffs to affirmatively allege compliance with its obligation to file with the New York State Department of Financial Services certain information concerning mortgages for which § 1304 notices have been served.  Plaintiff's complaint is subject to dismissal for failure to strictly comply with these statutory condition precedents.

Finally, this Court should also dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted because Plaintiff lacks standing to prosecute this foreclosure action. Plaintiff cannot prove its ownership of the note evidencing the mortgage loan which is the subject of this action, which is a crucial element of its *prima facie* foreclosure cause of action.

## FACTS

Mr. Pope resides at 5 Cebra Avenue, Staten Island, New York, 10301 ("the Property"). (Affidavit of Carlton Pope, hereinafter "Pope Aff.", ¶ 3.)  On or about April 24, 2008, Mr. Pope and two other borrowers, co-defendants Adam Rey and Angela Hall Boroughs, executed a note in favor of United Northern Mortgage Bankers, Ltd., which is secured by a mortgage on the Property.  (Pope Aff. ¶ 2.)  Plaintiff currently seeks to foreclose on that mortgage loan.

Mr. Pope has resided at the Property full-time since taking out the mortgage and is the only borrower who has made monthly mortgage payments on the subject mortgage loan. (Pope Aff. ¶¶ 3-5.)  Defendants Adam Rey and Angela Hall Boroughs have never resided at the Property. (Pope Aff. ¶ 5.)

Mr. Pope is an employee of Key Food Supermarkets and works at the 2245 Gerristen Avenue, Brooklyn, New York 11229 branch. (Pope Aff. ¶ 6.) On or about August 19, 2015, Mr. Pope received a phone call from an employee at the 575 Grand Street, Brooklyn, New York, 11211 branch of Key Food informing him that an envelope was received at the 575 Grand Street location in Mr. Pope's name.  (Pope Aff. ¶ 7.)  This employee sent the envelope through inter-office mail to the 2245 Gerristen Avenue branch, where Mr. Pope eventually received it.  (Pope Aff. ¶¶ 7-8.)  This envelope contained the summons and complaint in this action.  (Pope Aff. ¶ 8.) Mr. Pope has not worked at the 575 Grand Street branch of Key Food since 2004. (Pope Aff. ¶ 6.)

3

**ARGUMENT**

I.     **THE COURT SHOULD ABSTAIN FROM HEARING THIS ACTION BECAUSE OF NEW YORK'S COMPREHENSIVE STATUTORY AND REGULATORY SCHEME GOVERNING MORTGAGE SERVICING AND RESIDENTIAL FORECLOSURE ACTIONS**

In light of New York's comprehensive state legislation and regulations governing the judicial foreclosure process, and its interests in consistent enforcement of its consumer protections designed to prevent avoidable foreclosures by promoting affordable loan modifications and other home-saving solutions, this Court should decline to exercise jurisdiction over this foreclosure action.

Abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 814, 96 S. Ct. 1236, 1244-45, 47 L. Ed. 2d 483 (1976), *citing Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Abstention is also appropriate where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.*, *citing Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Important to the conclusion in *Burford* was the Court's finding that the state provided a unified method for formation of policy and determination of cases by the state courts. *See Liberty Mutual Ins. Co. v. Hurlburt*, 585 F.3d 639, 650 (2d Cir. 2009). Where a federal court's ruling may have a "broad impact on state policy . . . then abstention may be proper." *Canady v. Koch*, 608 F. Supp. 1460, 1468 (S.D.N.Y. 1985), *citing Smith v. Metropolitan Prop. & Liab. Ins. Co.*, 629 F.2d (2d Cir. 1980).

Both *Thibodaux* and *Burford* abstention principles apply to this foreclosure action because New York's local response to its foreclosure crisis implicates "policy problems of substantial public import" and its "coherent policy with respect to a matter of substantial public concern."  The New York legislature, judiciary and executive branches have enacted and promulgated a comprehensive array of laws and rules governing residential foreclosure proceedings designed to combat widespread lending abuses and prevent avoidable foreclosures in New York State.  This "coherent policy" of consumer protections designed to curb the mortgage servicing and foreclosure abuses that were rampant in New York State represent important state policy that will be subverted if foreclosing plaintiffs are permitted to evade New York State's consumer protections by pursuing foreclosure actions in federal court.

### A. New York's Residential Mortgage Foreclosure Process Implicates Issues of Local Concern and is Controlled by Comprehensive State Legislation, Regulations and Court Rules.

New York has enacted and promulgated a series of measures since the onset of the foreclosure crisis designed to prevent the kind of predatory lending that led to the foreclosure crisis, to blunt the impact of the foreclosure crisis on the individuals impacted by the crisis, and to promote home-retention solutions that both avert homelessness and the negative impacts on surrounding communities when homes are lost to avoidable foreclosures. Among those measures were:

- Mortgage Lending Reform Law:  Laws of New York, 2008, Chapter 472 ("Mortgage Lending Reform Law"), signed into law on August 5, 2008, enacted broad reforms to address the foreclosure crisis, amending New York's Real Property Actions and Proceedings Law ("RPAPL"), the Civil Practice Law and Rules ("CPLR"), Banking Law, General Obligations Law, Penal Law, Criminal Procedure Law, and Real Property Law ("RPL") to address a range of

5

mortgage lending and foreclosure practices.  The important issues of state policy, and New

York's interest in establishing a "coherent policy" to address the foreclosure crisis, are clear

from the legislative history of the Mortgage Lending Reform Law:

> New York State faces a mortgage crisis of immense magnitude.  Many families
> have lost their homes and entire neighborhoods have been devastated. In 2007,
> there were more than 52,000 foreclosure filings in the state - an increase of 10%
> from 2006 and 55% from 2005.  These statistics, especially in light of inaction by
> the federal government, make clear the need for state action on this issue.  This
> bill attempts to address the mortgage foreclosure crisis in two ways.  First, this
> bill provides assistance to homeowners currently at risk of losing their homes by
> providing additional protections and foreclosure prevention opportunities for such
> homeowners.  Second, this bill establishes further protections in the law to
> mitigate the possibility of similar crises in the future.

> N.Y. State S., Memo. in Support of Legis., S. 8143A, 2008 Leg., Bill Jacket, at
> p.9,  http://image.iarchives.nysed.gov/images/images/142344.pdf

In 2009, the Mortgage Lending Reform Law and laws relating to foreclosure actions on

home mortgage loans were further amended by Laws of New York, 2009, Chapter 507.  The

statement in support of S66007/A40007 explains the bill's purpose:

> This bill would build upon the reforms enacted in the 2008 legislation. In
> particular, this bill would: (1) allow a larger population of distressed
> homeowners to benefit from consumer protection laws and foreclosure
> prevention opportunities currently available only to borrowers of "high-
> cost," "subprime" and "non-traditional" home loans; (2) establish certain
> requirements for plaintiffs in foreclosure actions to maintain the
> foreclosed property; (3) establish protections for tenants residing in
> foreclosed properties; and (4) enhance consumer protection provisions to
> prevent distressed homeowners from falling prey to rescue scams.

> N.Y. State S., Memo. in Support of Legis., S. 66007, 2009 Leg., 20th
> Extraordinary Sess. (2009),
> http://open.nysenate.gov/legislation/bill/a40007-2009

Among the substantive legal provisions enacted with respect to residential foreclosures in

New York's judicial foreclosure process, which Plaintiff apparently seeks to evade by

commencing this action in this court, are:

- New York CPLR § 3408: Mandatory Settlement Conferences: As first enacted, this provision established a mandatory court-administered settlement conference for foreclosure actions involving "high-cost" or "subprime" home loans. The 2009 legislation amended CPLR § 3408 to expand the number of borrowers eligible to receive the benefit of the settlement conference by eliminating the requirement that the loan be "high-cost" or "subprime." The stated purpose of these conferences are to hold settlement conferences "for the purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to determining whether the parties can reach a mutually agreeable resolution *to help the defendant avoid losing his or her home*, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever other purposes the court deems appropriate. New York CPLR § 3408(a) (emphasis supplied).

In 2009 the settlement conference statute was amended with the enactment of CPLR § 3408(f), imposing an obligation to "negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible." The legislative history of the 2009 amendment imposing the good faith negotiation obligation made clear that its purpose was "to ensure that both plaintiff and defendant are prepared to participate in a meaningful effort at the settlement conference." N.Y. State S., Memo. in Support of Legis., S. 66007, 2009 Leg., 20th Extraordinary Sess. (2009), at 1(B), http://open.nysenate.gov/legislation/bill/a40007-2009. These court-supervised settlement conferences are held regardless of whether a defendant answered or otherwise appeared and have had the effect of bringing foreclosure defendants against whom default judgments would otherwise have been entered into the judicial process and connecting them with legal services agencies that provide free representation to distressed homeowners

7

navigating New York's judicial foreclosure settlement conference process.[1]   In federal court, in contrast, mandatory settlement conferences are not scheduled in residential foreclosure cases in which defendants have not appeared, and default judgments are processed without providing homeowners with the statutorily-mandated settlement conference at which plaintiffs are obligated to negotiate in good faith to achieve a loan modification, if possible.

- Notice Requirements Pursuant to NY RPAPL § 1304:   The Mortgage Lending Reform Law also enacted RPAPL § 1304, requiring plaintiffs to send notice to borrowers at least 90 days before they may commence a legal action against the borrower, known as a "90-Day Notice," which is a condition precedent to maintaining a foreclosure action.  The 2009 legislation amended RPAPL § 1304 to extend its application to all home loans and not just "high-cost" or "subprime" loans, and clarified that the 90-day notice requirement applies to any assignee of the original lender as well.

- Filing Requirement Pursuant to NY RPAPL § 1306:  The 2009 legislation added RPAPL § 1306, requiring plaintiffs to make a filing with the Superintendent of Banks (n/k/a the New York State Department of Financial Services) that includes information that the Superintendent would need to determine the type of loan at issue, including borrower's contact information and the amount claimed as due and owing on the mortgage.

- Certificate of Merit Pursuant to CPLR § 3012-b:  In response to revelations of rampant "robo-signing" of mortgage assignment documents and pleadings filed by plaintiffs in foreclosure actions, and following efforts by the plaintiffs' foreclosure bar to evade court rules

---

[1] As reported by the Chief Administrator of the Courts of the State of New York, prior to the enactment of these protections, 90 percent of foreclosure defendants in New York State defaulted. Once New York courts began notifying individual defendants of their scheduled mandatory settlement conferences under N.Y. C.P.L.R. § 3408, defaults, at least for the purposes of conferences, dropped to 10 percent. *See* 2011 Report of the Chief Administrator of the Courts, https://www.nycourts.gov/publications/pdfs/ForeclosuresReportNov2011.pdf, at p. 4.

designed to curb those practices, Governor Andrew M. Cuomo signed into law Chapter 306 of the Laws of New York, 2013, amending the CPLR to include CPLR § 3012-b, requiring plaintiffs' attorneys to file a Certificate of Merit with the summons and complaint in foreclosure actions on home loans.[2]  The attorney must certify that "there is a reasonable basis for the commencement of such action and that the plaintiff is currently the creditor entitled to enforce rights under such documents" based upon his or her review of the case and documents, and in consultation with the plaintiff, and attach copies of relevant instruments of indebtedness.

As with New York's other legislative responses addressing residential foreclosures, the legislative history makes the law's overarching purpose crystal clear:

> [T]his measure is an appropriate public policy response to the crisis in foreclosure cases. Statutory reform is needed to ensure the integrity of the mortgage foreclosure process and eliminate the cases brought without standing or merit. This measure seeks to prevent completely the problem of "shadow dockets" in residential foreclosure actions, a problem unforeseen at the time the recent affirmations rule was promulgated by administrative order.  Under this measure, the trial court would have reasonable assurance that all of the instruments of indebtedness underpinning these actions, and all instruments of assignment, if any, are in place at the commencement of the action.

> N.Y. State Assemb., Memo. in Support of Legis., A. 5582A, 2013 Leg., http://assembly.state.ny.us/leg/?default_fld=&bn=A05582&term=&Summary=Y&Memo=Y&Text=Y

- <u>Section 202.12-a of the Uniform Rules for New York State Trial Courts</u>:  Pursuant to the Laws of New York, 2009, chapter 507, s. 10-a(1), the chief administrator of the courts was given authority to promulgate additional rules to "ensure the just and expeditious processing of all settlement conferences."  http://open.nysenate.gov/legislation/bill/a40007-2009.  This

---

[2] On March 2, 2011, Chief Administrative Judge of the Courts of the State of New York signed an administrative order, AO/431/11, requiring plaintiff's counsel in residential foreclosure actions to file an affirmation with the court affirming that he or she personally reviewed plaintiff's documents and can confirm the factual accuracy of the allegations in the complaint and notarizations contained in supporting documents.  By Administrative Order AO/208/13 issued on August 1, 2013, the Chief Administrative Judge of the Courts ordered that AO/431/11 would not apply to residential mortgage foreclosure actions commenced on or after August 30, 2013 due to the amendment of  CPLR § 3012-b requiring a Certificate of Merit.

provision requires that any rules promulgated by the chief administrator shall ensure that each judge, judicial hearing officer, or referee overseeing settlement conferences have the "authority and power" to, *inter alia*, ensure that each party fulfills its obligations to negotiate in good faith under CPLR § 3408.  (*Id.*)  This provision also requires that the chief administrator of the courts submit an annual report to the Governor and certain members of the Legislature on the adequacy and effectiveness of the settlement conferences.  (*Id.*)

The rules promulgated by the chief administrator of the court are codified  at Section 202.12-a of the Uniform Rules for New York State Trial Courts and  require, *inter alia*, plaintiff to file the request for judicial intervention ("RJI") at the time it files proof of service of the summons and complaint with the county clerk (202.12-a(b)(1))[3]; the court to send a copy of the RJI or the defendant's contact information to a housing counselor for the purpose of making the homeowner aware of foreclosure prevention services (202.12-a(b)(2)); and the court to schedule the first settlement conference within 60 days of the filing of the RJI and notify all parties (202.12-a(c)(1)).  The rules also outline the settlement conference process and the rights and responsibilities of both parties, including the requirement to negotiate in good faith. (202.12-a(c)).  *See* http://www.nycourts.gov/rules/trialcourts/202.shtml#12a

- Loss Mitigation Pursuant to Part 419 of the New York State Department of Financial Services Business Conduct Rules:  In 2010, the New York State Banking Department, now known as the Department of Financial Services, promulgated regulations pursuant to its authority under  Banking Law Article 12-D  to "address the foreclosure crisis and establish greater consumer protections."  *See* http://www.dfs.ny.gov/about/press/pr100810.htm.  The regulations, which were most recently updated effective December 3, 2013, require, *inter alia*, that servicers

---

[3] The RJI is the mechanism by which actions in New York Supreme Court are assigned to a judge for pre-trial purposes and, in foreclosure actions, the mechanism whereby cases are tracked to the mandatory settlement conference process.

"shall make reasonable and good faith efforts" to engage in loss mitigation to avoid foreclosure, and provisions for loan modifications, written acknowledgement, borrower counseling, escalation process, alternative loss mitigation options, and foreclosure notification and compliance with CPLR § 3408.  The regulations also provide direction for day-to-day dealings between servicers and borrowers.

*See* http://www.dfs.ny.gov/legal/regulations/emergency/banking/ar419tx.htm; http://www.dfs.ny.gov/legal/regulations/emergency/banking/ar419lt.htm.  DFS, furthermore, maintains an administrative process whereby borrowers can file complaints when mortgage servicers violate the DFS mortgage servicing standards.  *See* http://www.dfs.ny.gov/consumer/fileacomplaint.htm.

New York's comprehensive scheme of homeowner protections "was designed to assist borrowers in foreclosure cases to remain in their home and to prevent a foreclosure crisis like the one currently gripping this state and the nation from reoccurring in the future," *Wells Fargo Bank, N.A. v. Hughes*, 27 Misc. 3d 628, 634, 897 N.Y.S.2d 605, 609 (Sup. Ct. Erie Cty. 2010). These protections implicate "policy problems of substantial public import whose importance transcends" the results in this case and are the product of New York's efforts to establish a "coherent policy with respect to a matter of substantial public concern."

### B. This Court Should Abstain from Entertaining this Residential Foreclosure Action Governed by New York's Comprehensive Legislative and Regulatory Foreclosure Process Framework.

New York's substantial interest in preventing avoidable foreclosures, and the associated consumer protections built in to its judicial foreclosure process, are clear from the comprehensive statutory enactments, administrative regulations, and court rules promulgated by its legislature, executive and judiciary. Those policies, which relate to matters of real property

long-considered to be matters of particular local concern, are undermined when a plaintiff in a foreclosure action is permitted to forum shop and evade New York's comprehensive processes and protections.   *See Hurlburt*, 585 F.3d, at 650 (upholding district court's abstention because federal review of worker compensation laws would "threaten to frustrate" the complex system of review that New York established and because the "New York Legislature has been very specific in prescribing the methods and means for providing compensation for injured workers," and noting that whether the subject matter of the litigation is traditionally one of state concern is a factor favoring abstention); *Moos v. Wells*, 585 F. Supp. 1348, 1350 (S.D.N.Y. 1984) (applying abstention doctrine and dismissing case involving landlord-tenant issues where the case "involves an aspect of state housing law of peculiarly local concern, which is controlled by comprehensive state legislation").   *See also Cox v. U.S. Dep't of Agric.*, 954 F. Supp. 2d 1061, 1064-65 (D. Nevada 2012) (in action arising out of state foreclosure proceedings, court abstained under *Burford* and found that property law is "primarily a matter of state concern" and that the state's interest in reviewing the state court's Foreclosure Mediation Program proceedings "is a critical one"), *rev'd on other grounds and remanded in Cox v. U.S. Dep't of Agric.*, 2015 WL 4187818 (9th Cir. 2015) (remanding to district court for dismissal because defendant had not waived its sovereign immunity).

Permitting an action such as this one to  proceed in federal court would allow Plaintiff to evade the mandatory settlement conference process required in all New York residential foreclosure actions (and the associated good faith negotiation obligation), in addition to the other statutory conditions precedent which are strictly construed by New York courts, and would encourage plaintiffs in other foreclosure actions to attempt to evade New York law by filing foreclosure actions in federal court, thereby undermining New York's strong state interest in its

judicial foreclosure process and its policies favoring preventing avoidable foreclosures.[4]  *See*

*Corcoran v. Ardra Ins. Co., Ltd.*, 657 F. Supp. 1223, 1230 (S.D.N.Y. 1987) ("In matters where

the state has a particularly strong interest . . . cases brought in the federal courts are more likely

to detract, than add, to state attempts to deal rationally with the problem.").

      One factor to be considered in deciding whether to abstain from hearing this action is the

adequacy of the state court's oversight of residential foreclosures. *See Hurlburt*, 585 F.3d at 650

(*Burford* analysis considers whether there is a "unified method for the formation of policy and

determination of cases by . . . the state courts" and whether judicial review is "adequate"); *Cox*,

954 F. Supp. 2d at 1064-64 (that state legislature "empowered" the state court to create and

administer a foreclosure mediation program and directed judicial review of those proceedings

was factor favoring *Burford* abstention).

      New York law has explicitly conferred authority on the judiciary to conduct foreclosure

settlement conferences by way of CPLR § 3408, and the 2009 law (amending the provision to

enact a good faith negotiation obligation) explicitly directed the Chief Administrator of the

Courts to promulgate rules to "ensure the just and expeditious processing of all settlement

conferences."  *See* 2009 N.Y. Laws ch. 507 § 10-a(1).  Moreover, this same legislation also

requires Chief Administrator of the Courts to submit an annual report that includes updates on

the Statewide Foreclosure Committee, a committee created by the Chief Administrative Judge in

2011 to "share case management strategies, best practices and lessons learned from local

programs," foreclosure filing trends, the shadow inventory pilot program, the certificate of merit

---

[4] A movement by plaintiffs to bring foreclosure actions in federal court would soon overwhelm federal court dockets. According to a recent report by the Comptroller of the State of New York, there were a total of 51,029 foreclosure cases pending in the counties comprising the Eastern District of New York (Kings, Nassau, Queens, Richmond and Suffolk) as of the beginning of 2015. *See* NYS Office of the State Comptroller, Local Government Snapshot (August 2015),  http://www.osc.state.ny.us/localgov/pubs/research/snapshot/foreclosure0815.pdf

legislation, and foreclosure settlement conference statistics (the 2014 report reported that 118,394 conferences were held in the reporting period, with a 9% increase in new foreclosure cases filed from 2013).  *See id.*; 2014 Report of the Chief Administrator of the Courts, at pp.3-4, https://www.nycourts.gov/publications/pdfs/2014-Foreclosure-Report-ofthe-CAJ.pdf

In Richmond County, where the subject property is located, all residential foreclosure actions are assigned to one judge who oversees the mandatory settlement conferences pursuant to CPLR §3408.  This judge and the court attorney referees who conduct foreclosure settlement conferences have developed expertise in the multitude of modification options and other loss mitigation options available to borrowers, as they have developed the capability to administer thousands of foreclosure settlement conferences every year.  *See* 2014 Report of the Chief Administrator of the Courts, at p.8, https://www.nycourts.gov/publications/pdfs/2014-Foreclosure-Report-ofthe-CAJ.pdf (foreclosures represent 30% of all pending Supreme Court civil cases, and "[r]ecognizing the importance of these cases to homeowners, financial institutions and indeed the economy of our state, the Judiciary has dedicated scarce judicial resources to prioritizing foreclosure matters")

The New York State judiciary has also developed considerable expertise as disputes concerning compliance with the good faith negotiation standard, and other aspects of New York foreclosure law, have been adjudicated at the trial and intermediate appellate court levels across New York State.  *See, e.g.*, *American Home Mortgage Servicing, Inc. v. Bobbitt*, 19093/08, NYLJ 1202635568948, at *1 (Sup., KI, Decided Dec. 12, 2013) (analyzing "good faith" standard under CPLR § 3408 and finding plaintiff failed to negotiate in good faith during settlement conferences spanning almost eighteen months); *U.S. Bank N.A. v. Gioia*, 42 Misc. 3d 947 (Sup. Ct., Queens Cty. 2013, McDonald, J.) (granting § 3408 relief for failure to negotiate in good

14

faith); *U.S. Bank N.A. v. Padilla*, 31 Misc. 3d 1208(A) (Sup. Ct., Dutchess Cty 2011, Pagones, J.) (finding that plaintiff failed to negotiate in good faith and noting that "[t]his court has the affirmative obligation to ensure that the primary statutory goal of keeping homeowners in their homes (*see* CPLR R3408[a]) and the concomitant obligation of ensuring that the parties act in good faith (*see* 22 NYCRR 202.12-a[c][4]) are met").  In light of the state courts' expertise in adjudicating disputes arising under CPLR § 3408, and their considerable expertise and familiarity with the legal issues arising out of mortgage servicing and foreclosure cases under New York State law, this Court should decline to exercise  jurisdiction over this action.  *See Phillips, Nizer, Benjamin, Krim & Balloon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973) (noting "particularly strong reason for abstention in cases which . . . raise issues in which the states have an especially strong interest and a well-developed competence for dealing with them") (internal citations omitted); *Moos*, 585 F. Supp. at 1349 (abstention appropriate in case implicating landlord-tenant issues in light of state courts' familiarity with resolving landlord-tenant disputes).

Moreover, because New York's mandatory foreclosure process and the associated good faith negotiation standard are of relatively recent vintage, the case law interpreting those provisions is still developing.  *See Onewest Bank, FSB v. Colace,* 130 A.D.3d 944, 2015 WL 4546498 at *1-2 (2d Dep't 2015) (summary judgment reversed where defendant presented evidence plaintiff "may have failed to exercise good faith during the settlement conference" and case remanded to trial court for a good faith hearing); *U.S. Bank, N.A. v. Williams*, 121 A.D.3d (2d Dep't 2014) (noting that foreclosure action "triggers equitable powers of the court" and crafting remedy for Plaintiff's failure to negotiate in good faith); *Wells Fargo Bank, N.A. v. Meyers*, 108 A.D.3d 9, 20 (2d Dep't 2013) (analyzing appropriate remedies for the failure to

15

negotiate in good faith and noting that courts have "resorted to a variety of alternatives" to enforce the statutory mandate); *Wells Fargo Bank, N.A. v. Van Dyke,* 101 A.D.3d 638 (1st Dep't 2012) (noting that CPLR 3408 is a remedial statute and that good faith is measured by the totality of the circumstances).  Abstention in favor of the New York state judiciary is especially appropriate here because New York State courts continue to grapple with the parameters of the good faith negotiation requirement and the appropriate remedies for failure to negotiate in good faith in the exercise of the state courts' equity jurisdiction in foreclosure cases, while the legislature and DFS continue to amend and refine the relevant laws and regulations to better protect homeowners and avoid future foreclosures.  *See, e.g.*, *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 564-65 (2d Cir. 1978) (upholding abstention  to allow state law to  develop around relatively new and recently amended Unfair Trade Practices Act).  *See Moos*, 585 F. Supp. at 1349 (noting that New York agencies and courts "are in the process of interpreting the applicable statute and developing a consistent body of law"); *Canady*, 608 F. Supp. at 1469-70 ("Local officials are still endeavoring to formulate and effect a coherent policy for providing shelter for the homeless.  Obviously federal court intervention in this area would interfere with those efforts."); *Cox*, 954 F. Supp. 2d at 1064-64 (federal review of foreclosure proceedings would "frustrate the orderly development of the law").

Plaintiff's attempt to evade New York's comprehensive substantive and procedural protections for homeowners should not be indulged, and this Court should abstain pursuant to *Thibodaux* and *Burford*, and dismiss the Complaint in order not to undermine New York's judicial foreclosure process and so that all parties to residential foreclosure actions in New York State are "given the benefit of an authoritative and uniform rule of law applied alike to all businesses and grievants." *Naylor*, 585 F.2d at 565.

## II.   THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF FAILED TO COMPLY WITH NY RPAPL §§ 1304, 1306, STATUTORY CONDITION PRECEDENTS

There is no dispute that this action is governed by the requirements of New York's Real Property Actions and Proceedings Law ("RPAPL").  (*See* Document 1, Complaint ¶ 1 (stating that "[t]his action is brought pursuant to [RPAPL] Article 13")). However, Plaintiff's mere recitation that it complied with the requirements of RPAPL §§ 1304 and 1306 (*see* Document 1, Complaint ¶ 17), without providing factual support or evidence of any kind, is insufficient to demonstrate compliance with these statutory prerequisites and consequently mandates dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  Plaintiff Has Not Complied With RPAPL § 1304.

The Complaint must be dismissed because Plaintiff did not give Mr. Pope the required ninety-day notice before commencing this case, a condition precedent to a foreclosure action. Compliance with RPAPL § 1304 is a statutory condition precedent for commencing a residential foreclosure proceeding. See *Aurora Loan Servs., LLC v Weisblum,* 923 N.Y.S.2d 609, 616 (2d Dep't 2011) (RPAPL § 1304 90-day notice is a condition precedent to commencement of foreclosure action, and plaintiff's failure to establish strict compliance where it failed to serve on co-borrower and where notice omitted required listing of counseling agencies, among other deficiencies, required dismissal of foreclosure action); *Bank of Am. v. Guzman*, 892 N.Y.S.2d 846, 847 (Sup. Ct. Queens Cty. 2009). RPAPL § 1304 requires that mortgage holders give borrowers an opportunity to remedy any default by sending the borrower a notice 90 days prior to commencing a foreclosure action, so that the borrower may "consider recasting or otherwise modifying the mortgage or taking other steps to avoid foreclosure." *Kearney v. Kearney*, 979 N.Y.S.2d 226, 231 (Sup. Ct. Monroe Cty. 2013). RPAPL § 1304(1) provides:

> Notwithstanding any other provision of law, with regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower . . . [that he or she is at risk of losing his or her home].

*Cadelrock Joint Venture v. Callender*, 973 N.Y.S.2d 539, 541 (Sup. Ct. Kings Cty. 2013). The

Section goes on to describe what exactly must be included in such notice. RPAPL § 1304(2)

provides that such notice must be made by registered or certified mail and also by first-class mail

to the last known address of the borrower.

Mr. Pope did not receive a ninety-day notice by first-class mail or registered or certified

mail prior to the commencement of this action as required by RPAPL § 1304, nor did Plaintiff's

Complaint attach or reference any such notice. (*See* Pope Aff. ¶ 9; *see also* Document 1,

Complaint). Instead, the only mention of RPAPL § 1304 in Plaintiff's Complaint comes in the

form of a vague and conclusory allegation that "Plaintiff has complied with . . . RPAPL Section

1304" unsupported by any evidence of service of the required notice (Document 1, Complaint ¶

17). Plaintiff did not submit  "a sworn statement that the . . . [notice] was mailed by a particular

person, or that a particular process, which resulted in mailing, was uniformly and diligently

followed and has therefore failed to satisfy this crucial element of a foreclosure cause of action

under New York law. *See, e.g.*, *Kearney*, 979 N.Y.S.2d at 370-72 (finding plaintiff failed to

produce evidence to raise the presumption of proper mailing of RPAPL § 1304 statutory notices,

where plaintiff submitted a copy of the notice addressed to the borrower, a United States Post

Office "tracking confirmation," and a New York State Banking Department document allegedly

documenting the mortgagee's compliance with the notice requirement).

Accordingly, because Plaintiff has not demonstrated compliance with the statutory

condition precedent contained in RPAPL § 1304, the Complaint must be dismissed. *See*

*Cadelrock Joint Venture v. Callender*, 973 N.Y.S.2d at 542 (citing *Weisblum,* 923 N.Y.S.2d at 614, 617 (describing the legislative intent of RPAPL § 1304 that is to ensure an opportunity for communication between the lender and distressed homeowner prior to the commencement of a foreclosure proceeding); *Deutsche Bank Nat'l Trust Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013) (plaintiff has burden of establishing proper servicer under RPAPL § 1304). Further, Plaintiff should be permanently enjoined from collecting interest, fees, and costs due and owing on the Note and Mortgage from 90 days prior to the date of the filing of the Complaint until Plaintiff follows the requirements of RPAPL § 1304 and provides the 90-day notices as required by the statute. *See Kearney*, 979 N.Y.S.2d at 376-77 (permanently enjoining lender from imposing any interest, fees or legal expenses on borrower from 90-days prior to filing of the complaint as penalty for failure to serve RPAPL 1304 90-Day Notice, because otherwise lender would have profited from its violation of statute and borrower was harmed by accrual of additional interest and fees). Given that Plaintiff can simply send the proper RPAPL § 1304 notices after dismissal of this case and then commence a second foreclosure action, barring the accrual of interest, fees, and costs will ensure that Mr. Pope is not made to bear an increased debt burden due to Plaintiff's misconduct. *See id.*

### B.  Plaintiff Has Not Complied With RPAPL § 1306.

The Complaint must also be dismissed because Plaintiff has failed to state a cause of action, having failed to meet the pleading requirements of RPAPL § 1306. RPAPL § 1306(1) requires that "[a]ny complaint served in a proceeding initiated pursuant to . . . [Article 13 of the RPAPL] shall contain, as a condition precedent to such proceeding, an affirmative allegation that at the time the proceeding is commenced, the plaintiff has complied with the provisions of this section." RPAPL § 1306(1) and (2) require that each lender, assignee, or mortgage loan servicer

19

file with the Superintendent of Financial Services (the "Superintendent") within three business days of mailing the 90-day pre-litigation notice required under RPAPL § 1304, "the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage, and such other information as will enable the superintendent to ascertain the type of loan at issue."

In *Ocwen REO Trust v. Larmond*, Index No. 6769/2011, Slip Op. at 5-6 (Sup. Ct. Kings Cty. June 3, 2014) (annexed hereto as Exhibit 1), a foreclosure action was dismissed in part because the plaintiff failed to comply with RPAPL § 1306(1). While the complaint in *Larmond* included a recitation that "the plaintiff has complied with the requirements of RPAPL 1306 regarding the filing of the pre-foreclosure information with the Banking Department," it did not specify "how, when or who complied with RPAPL 1306. . . . , [t]herefore, the movant [did] not compl[y] with the mandatory pleading requirements of RPAPL 1306." *Id.* at 5. Plaintiff's recitation here that it "filed the information required by RPAPL Section 1306" is similarly devoid of any factual detail and consequently insufficient. (*See* Document 1, Complaint ¶ 17). Furthermore, the record is devoid of any evidence that Plaintiff complied with the statute's requirement to file the 90-day notice with the Superintendent..

Given that Plaintiff has failed to comply with RPAPL § 1306, a mandatory pleading requirement and condition precedent to commencing a residential foreclosure action in New York, this case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Courts strictly construe the requirements of Article 13 of the RPAPL and even seemingly technical failures of compliance with such provisions are fatal to such actions. *See Weisblum,* 923 N.Y.S.2d at 616 (dismissing foreclosure complaint because plaintiff failed to strictly comply with RPAPL § 1304, "a condition precedent" to the commencement of a foreclosure action); *First Nat'l Bank of*

*Chicago v. Silver*, 899 N.Y.S.2d 256 (2d Dep't 2010) (reversing trial court and dismissing

complaint because plaintiff failed to comply with notice requirements of RPAPL § 1303).

Plaintiff's failure to comply with the pleading requirements of RPAPL § 1306 is equally fatal,

and requires dismissal.

### III. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF DOES NOT HAVE STANDING TO PURSUE A FORECLOSURE ACTION

This Court should also dismiss this case for Plaintiff's lack of standing because, without

standing, this Court is without subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Moreover, Plaintiff's ownership of the note is an element of its *prima facie* case.  *See Campaign*

*v. Barba*, 805 N.Y.S.2d 86, 86 (2d Dep't 2005) ("To establish a prima facie case in an action to

foreclose a mortgage, the plaintiff must establish the existence of the mortgage and mortgage

note, ownership of the mortgage, and the defendant's default in payment."); *see also HSBC Bank*

*USA N.A. v. Roumiantseva*, 2013 WL 2500829, at *2 (Kings Cty. Sup. Ct. June 11, 2013)

("Plaintiff's ownership of the note is not an issue of standing but an element of its cause of

action, which it must plead and prove."). Accordingly, Plaintiff's Complaint is also subject to

dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

"In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or

assignee of the subject mortgage and the holder or assignee of the underlying note at the time the

action is commenced." *In re Gorman*, 2011 WL 5117846, *5 (Bankr. E.D.N.Y. Oct. 27, 2011)

(*citing Bank of New York v. Silverberg*, 86 A.D.3d 274, 280 (2d Dep't 2011) (internal quotation

marks omitted)). Whether a plaintiff has "[s]tanding is a threshold issue." *Prestige Builder &*

*Mgmt. LLC v. Safeco Ins. Co. of Am.*, 896 F. Supp. 2d 198, 202 (E.D.N.Y. 2012) (citations

omitted); *see also In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 2014 WL

868827 (E.D.N.Y. Mar. 5, 2014) *on reconsideration, In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 2014 WL 1598017 (E.D.N.Y. Apr. 21, 2014) ("Whether a Plaintiff has Article III standing is a threshold issue that 'determine[s] the power of the court to entertain the suit.'" (citations omitted)). Because Plaintiff is not the holder or assignee of the note and mortgage, Plaintiff lacks standing and the action must be dismissed.

Plaintiff relies on the legally inadequate written assignment from Mortgage Electronic Registration Systems ("MERS"), which does not confer standing to sue and requires dismissal of the foreclosure complaint. Where a Plaintiff claims title to a mortgage and note pursuant to an assignment by an agent of the original holder, the agent must submit proof that the mortgagee gave the agent the power to assign on its behalf.[5] *Silverberg*, 86 A.D.3d at 280-283 (assignment of mortgage by MERS was a nullity because it was not the true holder of the note and mortgage and it lacked authority as nominee to assign). "To have a proper assignment of a mortgage by an authorized agent, a power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage." *Bank of New York v. Alderazi*, 900 N.Y.S.2d 821, 823-824 (Kings Cty. Sup. Ct. 2010) *(citing HSBC Bank USA, NA v. Yeasmin*, 2008 WL 1915130, *2 (Kings Cty. Sup. Ct. May 2, 2008)) (internal quotations omitted), *rev'd on other grounds in Bank of New York v. Alderazi*, 99 A.D.3d 837 (2d Dep't 2012). In addition, a nominee for purposes of recording a mortgage does not have authority to assign the holder's interest in the mortgage and note simply by virtue of its status as nominee or based on a mere recitation by the mortgagor (such as a borrower acknowledgement in the standard form mortgage) of the nominee's right. *Silverberg*, 86 A.D.3d at 280-283. A failure to provide proof of the grant of power to assign is

---

[5] The subsequent assignment by the Secretary of Housing and Urban Development ("HUD") purporting to appoint Caliber Home Loans, Inc. as its attorney-in-fact on behalf of LSF9 Mortgage Holding, LLC and LSF9 Master Participation Trust is equally deficient as Plaintiff makes no allegations concerning HUD's authority to act on behalf LSF9 Mortgage Holding, LLC and LSF9 Master Participation Trust.  (*See* Document 1-2, Certificate of Merit, at 28).

grounds for a court to dismiss a foreclosure action without prejudice. *OneWest v. Drayton*, 2010 WL 4187065, *11-12 (Kings Cty. Sup. Ct. Oct. 21, 2010)

In the Complaint, Plaintiff asserts ownership of the loan as an assignee based on a written assignment of mortgage, originally by MERS as nominee for the loan originator United Northern Mortgage Bankers, Ltd. to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP.  Plaintiff's Complaint alleges that the mortgage was then assigned to The Secretary of Housing and Urban Development, then to LSF9 Master Participation Trust, then finally to U.S. Bank Trust, N.A. as trustee for LSF9 Master Participation Trust.  (*See* Document 1, Complaint ¶ 13). Yet, Plaintiff's reliance on the MERS assignment is fatal to its ownership claim. The Second Department in *Silverberg* clearly held that MERS *never* had authority to assign mortgage loans simply by virtue of its status as nominee for recording purposes and that any assignment by MERS is therefore invalid. *Silverberg*, 86 A.D.3d at 281-283; *see also In re Gorman*, 2011 WL 5117846 at *4-5 (citing *Silverberg*).

Accordingly, insofar as Plaintiff here continues to assert standing based on a MERS assignment, this action should be dismissed.[6] *See Silverberg*, 86 A.D.3d at 283 (dismissing foreclosure complaint relying on MERS written assignment of mortgage); *U.S. Bank  v. Sharif*, 89 A.D.3d 723, 725 (2d Dep't 2011) (same); *CitiMortgage, Inc. v. Stosel*, 89 A.D.3d 887, 888 (2d Dep't 2011) (same).

## IV.     THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE SERVICE OF PROCESS WAS INSUFFICIENT

The Court lacks personal jurisdiction over Mr. Pope because the Plaintiff did not properly

---

[6] Defendant reserves his right to seek dismissal of the Complaint for Plaintiff's lack of standing based on other grounds that may be discovered at a later date.

serve him with process in accordance with New York Civil Practice Law and Rules § 308(2).

The summons and complaint were not served at Mr. Pope's "actual place of business". CPLR §

308(6) defines "actual place of business" as "any location that the defendant, through regular

solicitation or advertisement, has held out as its place of business." *See Warshun v. New York*

*Community Bancorp Inc.*, 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013) ("New York courts have

construed 'actual place of business' to include (1) a place where the defendant regularly transacts

business, or (2) an establishment that the defendant owns or operates . . . .").

　　　Plaintiff's affidavit of service states that Mr. Pope was served by "delivering a true copy

of said documents to Harry Doe (Last Name Refused), Co-Worker" at "Key Food Supermarket,

575 Grand Street, Brooklyn, NY 11211", and that "said premises is defendant [sic] actual place

of business within the state." (*See* Document 13.)  Mr. Pope is not an employee of the Key Food

branch located at 575 Grand Street.  He is employed by the Key Food branch located at 2245

Gerritsen Avenue, Brooklyn, New York, 11229 and has worked at that location since 2004.

(Pope Aff. ¶ 6.)  Mr. Pope worked at the 575 Grand Street location from 1995 through 2004,

over eleven years prior to the attempted service of process at that location. (Pope Aff. ¶ 6.)

　　　Mr. Pope's actual place of business is the Key Food supermarket located at 2245

Gerristen Avenue because that is the location where he regularly reports and performs his duties

as a Key Food employee.  While Mr. Pope worked at the 575 Grand Street location, where

service was attempted, many years ago, service of process is not effective when made at a

location where a person no longer works or at a different branch of the same employer.  *See*

*Warshun*, 957 F. Supp. 2d at 266 (service at one of bank's many locations was ineffective where

defendants did not have offices at or regularly come to that location); *Jackson v. Cty. of Nassau*,

339 F. Supp. 2d 473, 478 (E.D.N.Y. 2004) (service not effected pursuant to CPLR § 308(2)

24

where service was attempted at a medical center where the defendant was no longer employed at the time of service); *Selmani v. City of New York*, 100 A.D.3d 861, 861-862 (2d Dep't 2012) (service at fire department's headquarters was ineffective because defendant did not regularly transact business at that location).

## CONCLUSION

For all of the foregoing reasons, Defendant Carlton Pope respectfully requests the Court grant his Motion to Dismiss and enter an order dismissing Plaintiff's claims.

Dated: Staten Island, New York
September 24, 2015

_____/s/ Megan J. Freismuth_____
Megan J. Freismuth, Esq.
STATEN ISLAND LEGAL SERVICES
36 Richmond Terrace Suite 205
Staten Island, NY 10301
Tel: (718) 233-6480
mfreismuth@silsnyc.org
*Attorneys for Defendant Carlton Pope*

## Certificate of Service

I hereby certify that on September 24, 2015, the foregoing document was served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon Kevin Young, Esq. by first-class mail to 1775 Wehrle Drive, Ste. 100, Williamsville, New York, 14221 and electronic mail.

_____/s/ Megan Freismuth_____

25